Kim R. Lepore (SBN 019130)
klepore@wrightlegal.net
Jamin S. Neil (SBN 026655)
jneil@wrightlegal.net
**WRIGHT, FINLAY & ZAK, LLP**
16427 N. Scottsdale Road, Suite 300
Scottsdale, Arizona 85254
Telephone: (602) 842-3368
Facsimile: (949) 608-9142

Attorneys for *Defendant/Counterclaimant*
Seterus, Inc.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edward Scott and Bettyann Scott,<br><br>   Plaintiffs,<br><br>  vs.<br><br>Seterus, Inc.,<br><br>   Defendant. | Case No. 2:16-cv-04221-MHB<br><br>**SETERUS, INC.'S ANSWER**<br><br>**AND**<br><br>**COUNTERCLAIM** |
| Seterus, Inc.,<br><br>   Counterclaimant,<br><br>  vs.<br><br>Edward Scott and Bettyann Scott,<br><br>   Counterdefendants. | |

 *Defendant* Seterus, Inc. ("<u>Seterus</u>"), by and through counsel undersigned, hereby responds to the First Amended Complaint ("<u>Complaint</u>") filed by *Plaintiffs* Edward Scott and Bettyann Scott (collectively, "<u>Plaintiffs</u>") by admitting, denying or alleging as follows:

## PARTIES

 1. Seterus admits that Plaintiffs reside in Maricopa County, Arizona. Seterus lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 1 of the Complaint and, therefore, denies the same.

2.      Seterus admits that it is a Delaware corporation doing business in Arizona.

3.      Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 3 of the Complaint and, therefore, denies the same.

### JURISDICTION AND VENUE

4.      Seterus admits that this Court has jurisdiction.

5.      Seterus admits that venue is proper.

### FACTUAL ALLEGATIONS

6.      Seterus admits the allegations contained in Paragraph 6 of the Complaint.

7.      Seterus admits that the servicing rights to the Loan were transferred to IBM Lender Business Process Services, Inc. ("LBPS") on October 1, 2010 and that LBPS subsequently changed its name to Seterus. Seterus lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 7 of the Complaint and, therefore, denies the same.

8.      Seterus admits that admits that the Alt Mod was recorded with the Maricopa County Recorder on September 9, 2010, as Instrument No. 2010-0778256. Seterus lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 8 of the Complaint and, therefore, denies the same.

9.      Seterus admits that Corporate Asssignment of Deed of Trust was recorded with the Maricopa County Recorder on November 12, 2010, as Instrument No. 2010-0990260 speaks for itself. Seterus lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 9 of the Complaint and, therefore, denies the same.

10.     Seterus denies the allegations contained in Paragraph 10 of the Complaint.

11.     Seterus admits that Plaintiffs filed a lawsuit against LBPS in Maricopa County Superior Court on May 11, 2011 and were assigned Case No. CV2011-052587. Seterus lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 11 of the Complaint and, therefore, denies the same.

12.     Seterus denies the allegations contained in Paragraph 12 of the Complaint.

13.     Seterus denies the allegations contained in Paragraph 13 of the Complaint.

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

14.     Seterus denies the allegations contained in Paragraph 14 of the Complaint.

15.     Seterus denies the allegations contained in Paragraph 15 of the Complaint.

16.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 16 of the Complaint and, therefore, denies the same.

17.     Seterus denies the allegations contained in Paragraph 17 of the Complaint.

18.     Seterus admits that it drafted a new modification of the Loan to implement the terms of the Alt Mod. Seterus lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 18 of the Complaint and, therefore, denies the same.

19.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 19 of the Complaint and, therefore, denies the same.

20.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 20 of the Complaint and, therefore, denies the same.

21.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 21 of the Complaint and, therefore, denies the same.

22.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 22 of the Complaint and, therefore, denies the same.

23.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 23 of the Complaint and, therefore, denies the same.

24.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 24 of the Complaint and, therefore, denies the same.

25.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 25 of the Complaint and, therefore, denies the same.

26.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 26 of the Complaint and, therefore, denies the same.

27.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 27 of the Complaint and, therefore, denies the same.

28.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 28 of the Complaint and, therefore, denies the same.

SETERUS, INC.'S ANSWER AND COUNTERCLAIM

29.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 29 of the Complaint and, therefore, denies the same.

30.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 30 of the Complaint and, therefore, denies the same.

31.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 31 of the Complaint and, therefore, denies the same.

32.     Paragraph 32 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 32 of the Complaint.

33.     Paragraph 33 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 33 of the Complaint.

34.     Seterus admits that the Current Mod speaks for itself. Seterus lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 34 of the Complaint and, therefore, denies the same.

35.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 35 of the Complaint and, therefore, denies the same.

36.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 36 of the Complaint and, therefore, denies the same.

37.     Paragraph 37 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 37 of the Complaint.

38.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 38 of the Complaint and, therefore, denies the same.

39.     Seterus admits that the Current Mod was recorded with the Maricopa County Recorder on November 14, 2011, as Instrument No. 20110939224.

40.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 40 of the Complaint and, therefore, denies the same.

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

41.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 41 of the Complaint and, therefore, denies the same.

42.     Seterus admits that it did not issue an IRS Form 1099-C for the Plaintiffs' 2011 tax year. Seterus denies the remaining allegeations contained in Paragraph 42 of the Complaint.

43.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 43 of the Complaint and, therefore, denies the same.

44.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 44 of the Complaint and, therefore, denies the same.

45.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 45 of the Complaint and, therefore, denies the same.

46.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 46 of the Complaint and, therefore, denies the same.

47.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 47 of the Complaint and, therefore, denies the same.

48.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 48 of the Complaint and, therefore, denies the same.

49.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 49 of the Complaint and, therefore, denies the same.

50.     Seterus denies the allegations contained in Paragraph 50 of the Complaint.

51.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 51 of the Complaint and, therefore, denies the same.

52.     Paragraph 52 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 52 of the Complaint.

53.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 53 of the Complaint and, therefore, denies the same.

54.     Seterus lacks sufficient information to admit or deny the allegations contained

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

1    in Paragraph 54 of the Complaint and, therefore, denies the same.

2           55.     Seterus lacks sufficient information to admit or deny the allegations contained

3    in Paragraph 55 of the Complaint and, therefore, denies the same.

4           56.     Seterus lacks sufficient information to admit or deny the allegations contained

5    in Paragraph 56 of the Complaint and, therefore, denies the same.

6           57.     Seterus lacks sufficient information to admit or deny the allegations contained

7    in Paragraph 57 of the Complaint and, therefore, denies the same.

8           58.     Seterus admits that the letter attached to Plaintiffs' Complaint as Exhibit 8

9    speaks for itself.

10          59.     Seterus lacks sufficient information to admit or deny the allegations contained

11   in Paragraph 59 of the Complaint and, therefore, denies the same.

12          60.     Paragraph 60 of the Complaint is a legal conclusion that does not require a

13   response.  To the extent a response is required, Seterus denies the allegations contained in

14   Paragraph 60 of the Complaint.

15          61.     Seterus admits that the letter attached to Plaintiffs' Complaint as Exhibit 8

16   speaks for itself.

17          62.     Seterus lacks sufficient information to admit or deny the allegations contained

18   in Paragraph 62 of the Complaint and, therefore, denies the same.

19          63.     Seterus lacks sufficient information to admit or deny the allegations contained

20   in Paragraph 63 of the Complaint and, therefore, denies the same.

21          64.     Seterus lacks sufficient information to admit or deny the allegations contained

22   in Paragraph 64 of the Complaint and, therefore, denies the same.

23          65.     Seterus lacks sufficient information to admit or deny the allegations contained

24   in Paragraph 65 of the Complaint and, therefore, denies the same.

25          66.     Seterus lacks sufficient information to admit or deny the allegations contained

26   in Paragraph 66 of the Complaint and, therefore, denies the same.

27          67.     Seterus lacks sufficient information to admit or deny the allegations contained

28   in Paragraph 67 of the Complaint and, therefore, denies the same.

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

68.     Seterus denies the allegations contained in Paragraph 68 of the Complaint.

69.     Seterus denies the allegations contained in Paragraph 69 of the Complaint.

70.     Seterus denies the allegations contained in Paragraph 70 of the Complaint.

71.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 71 of the Complaint and, therefore, denies the same.

72.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 72 of the Complaint and, therefore, denies the same.

73.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 73 of the Complaint and, therefore, denies the same.

74.     Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 74 of the Complaint and, therefore, denies the same.

<u>**COUNT I**</u>
**(Declaratory Judgment)**

75.     In response to Paragraph 75 of the Complaint, Seterus repeats, realleges, and reasserts its answers to the foregoing as if specifically set forth herein.

76.     Seterus admits the allegations contained in Paragraph 76 of the Complaint.

77.     Seterus denies the allegations contained in Paragraph 77 of the Complaint.

78.     Seterus admits the allegations contained in Paragraph 78 of the Complaint.

79.     Paragraph 79 of the Complaint is a prayer for relief to which no response is required. To the extent this section requires a response, Seterus denies the allegations contained therein.

80.     Seterus denies the allegations contained in Paragraph 80 of the Complaint.

<u>**COUNT II**</u>
**(Breach of Contract)**

81.     In response to Paragraph 81 of the Complaint, Seterus repeats, realleges, and reasserts its answers to the foregoing as if specifically set forth herein.

82.     Paragraph 82 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

1  Paragraph 82 of the Complaint.

2       83.    Paragraph 83 of the Complaint is a legal conclusion that does not require a

3  response.  To the extent a response is required, Seterus denies the allegations contained in

4  Paragraph 83 of the Complaint.

5       84.    Paragraph 84 of the Complaint is a legal conclusion that does not require a

6  response.  To the extent a response is required, Seterus denies the allegations contained in

7  Paragraph 84 of the Complaint.

8       85.    Seterus lacks sufficient information to admit or deny the allegations contained

9  in Paragraph 85 of the Complaint and, therefore, denies the same.

10      86.    Paragraph 86 of the Complaint is a legal conclusion that does not require a

11 response.  To the extent a response is required, Seterus denies the allegations contained in

12 Paragraph 86 of the Complaint.

13      87.    Seterus lacks sufficient information to admit or deny the allegations contained

14 in Paragraph 87 of the Complaint and, therefore, denies the same.

15      88.    Seterus lacks sufficient information to admit or deny the allegations contained

16 in Paragraph 88 of the Complaint and, therefore, denies the same.

17      89.    Paragraph 89 of the Complaint is a legal conclusion that does not require a

18 response.  To the extent a response is required, Seterus denies the allegations contained in

19 Paragraph 89 of the Complaint.

20      90.    Paragraph 90 of the Complaint is a legal conclusion that does not require a

21 response.  To the extent a response is required, Seterus denies the allegations contained in

22 Paragraph 90 of the Complaint.

23      91.    Paragraph 91 of the Complaint is a legal conclusion that does not require a

24 response.  To the extent a response is required, Seterus denies the allegations contained in

25 Paragraph 91 of the Complaint.

26      92.    Paragraph 92 of the Complaint is a prayer for relief to which no response is

27 required. To the extent this section requires a response, Seterus denies the allegations

28 contained therein.

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

## COUNT III
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

93.  In response to Paragraph 93 of the Complaint, Seterus repeats, realleges, and reasserts its answers to the foregoing as if specifically set forth herein.

94.  Paragraph 94 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 94 of the Complaint.

95.  Paragraph 95 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 95 of the Complaint.

96.  Seterus denies the allegations contained in Paragraph 96 of the Complaint.

97.  Seterus denies the allegations contained in Paragraph 97 of the Complaint.

98.  Seterus denies the allegations contained in Paragraph 98 of the Complaint.

99.  Paragraph 99 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 99 of the Complaint.

100.  Seterus denies the allegations contained in Paragraph 100 of the Complaint.

101.  Paragraph 101 of the Complaint is a prayer for relief to which no response is required. To the extent this section requires a response, Seterus denies the allegations contained therein.

## COUNT IV
### (Negligent Misrepresentation)

102.  In response to Paragraph 102 of the Complaint, Seterus repeats, realleges, and reasserts its answers to the foregoing as if specifically set forth herein.

103.  Paragraph 103 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 103 of the Complaint.

104.  Seterus lacks sufficient information to admit or deny the allegations contained

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

1   in Paragraph 104 of the Complaint and, therefore, denies the same.

2       105.    Paragraph 105 of the Complaint is a legal conclusion that does not require a

3   response.  To the extent a response is required, Seterus denies the allegations contained in

4   Paragraph 105 of the Complaint.

5       106.    Seterus lacks sufficient information to admit or deny the allegations contained

6   in Paragraph 106 of the Complaint and, therefore, denies the same.

7       107.    Paragraph 107 of the Complaint is a legal conclusion that does not require a

8   response.  To the extent a response is required, Seterus denies the allegations contained in

9   Paragraph 107 of the Complaint.

10      108.    Seterus denies the allegations contained in Paragraph 108 of the Complaint.

11      109.    Paragraph 109 of the Complaint is a legal conclusion that does not require a

12  response.  To the extent a response is required, Seterus denies the allegations contained in

13  Paragraph 109 of the Complaint.

14      110.    Paragraph 110 of the Complaint is a legal conclusion that does not require a

15  response.  To the extent a response is required, Seterus denies the allegations contained in

16  Paragraph 110 of the Complaint.

17      111.    Paragraph 111 of the Complaint is a legal conclusion that does not require a

18  response.  To the extent a response is required, Seterus denies the allegations contained in

19  Paragraph 111 of the Complaint.

20      112.    Paragraph 112 of the Complaint is a legal conclusion that does not require a

21  response.  To the extent a response is required, Seterus denies the allegations contained in

22  Paragraph 112 of the Complaint.

23      113.    Paragraph 113 of the Complaint is a legal conclusion that does not require a

24  response.  To the extent a response is required, Seterus denies the allegations contained in

25  Paragraph 113 of the Complaint.

26      114.    Paragraph 114 of the Complaint is a legal conclusion that does not require a

27  response.  To the extent a response is required, Seterus denies the allegations contained in

28  Paragraph 114 of the Complaint.

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

115.   Paragraph 115 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 115 of the Complaint.

116.   Paragraph 116 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 116 of the Complaint.

117.   Paragraph 117 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 117 of the Complaint.

118.   Seterus denies the allegations contained in Paragraph 118 of the Complaint.

119.   Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 119 of the Complaint and, therefore, denies the same.

120.   Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 120 of the Complaint and, therefore, denies the same.

121.   Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 121 of the Complaint and, therefore, denies the same.

122.   Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 122 of the Complaint and, therefore, denies the same.

123.   Seterus denies the allegations contained in Paragraph 123 of the Complaint.

124.   Paragraph 124 of the Complaint is a prayer for relief to which no response is required. To the extent this section requires a response, Seterus denies the allegations contained therein.

## <u>COUNT V</u>
### (Arizona Consumer Fraud Act, A.R.S. § 44-1521 *et seq.*)

125.   In response to Paragraph 125 of the Complaint, Seterus repeats, realleges, and reasserts its answers to the foregoing as if specifically set forth herein.

126.   Paragraph 126 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

Paragraph 126 of the Complaint.

127.    Paragraph 127 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 127 of the Complaint.

128.    Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 128 of the Complaint and, therefore, denies the same.

129.    Paragraph 129 of the Complaint is a legal conclusion that does not require a response.  To the extent a response is required, Seterus denies the allegations contained in Paragraph 129 of the Complaint.

130.    Seterus denies the allegations contained in Paragraph 130 of the Complaint.

131.    Seterus denies the allegations contained in Paragraph 131 of the Complaint.

132.    Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 132 of the Complaint and, therefore, denies the same.

133.    Seterus denies the allegations contained in Paragraph 133 of the Complaint.

134.    Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 134 of the Complaint and, therefore, denies the same.

135.    Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 135 of the Complaint and, therefore, denies the same.

136.    Seterus denies the allegations contained in Paragraph 136 of the Complaint.

137.    Seterus denies the allegations contained in Paragraph 137 of the Complaint.

138.    Seterus lacks sufficient information to admit or deny the allegations contained in Paragraph 138 of the Complaint and, therefore, denies the same.

139.    Seterus denies the allegations contained in Paragraph 139 of the Complaint.

140.    Paragraph 140 of the Complaint is a prayer for relief to which no response is required. To the extent this section requires a response, Seterus denies the allegations contained therein.

## **GENERAL DENIAL**

Seterus denies any and all allegations not expressly admitted herein.

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

## AFFIRMATIVE DEFENSES

A.   **Mistake:** The amounts omitted in the Current Mod were the result of mistake.

B.   **Unjust Enrichment:** The relief sought by Plaintiffs, if granted, will result in unjustly enriching Plaintiffs at Seterus' expense.

C.   **No Duty:** Seterus owed no duty of care to Plaintiffs.

D.   **Estoppel:** Plaintiffs' claims are barred by estoppel.

E.   **Laches:** Plaintiffs' claims are barred by laches.

F.   **Unclean Hands:** Plaintiffs have "unclean hands."

G.   **Consent:** Consent bars Plaintiffs' claims.

H.   **Good Faith:** Seterus' actions were reasonable and necessary, and it acted in good faith at all times.

I.   **Miscellaneous:** To prevent the waiver of affirmative defenses, Seterus raises the following defenses, which through subsequent discovery may indeed be supported by the facts of this case: accord and satisfaction; assumption of risk; contributory negligence; duress; failure of consideration; failure to join indispensable parties; failure to mitigate damages; illegality; insufficiency of service of process; lack of capacity; lack of condition precedent; lack of jurisdiction of person; license; non-party at fault; rescission; recoupment; release; repudiation; res judicata; standard of care; standing; statute of frauds; statute of limitations; and all other defenses contained in Rules 4, 8, 12 and 19 of the Federal Rules of Civil Procedure.

**WHEREFORE**, Seterus respectfully prays for judgment as follows:

A.   That Plaintiffs take nothing by way of their Complaint and that it be dismissed with prejudice;

B.   That judgment be entered in favor of Seterus;

C.   That Seterus be awarded its reasonable attorneys' fees and costs incurred, expended and accruing pursuant to A.R.S. §§ 12-341, 12-341.01, 12-349, and any other statutory or common law and as allowed and required by the contracts in this case; and

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

D.   For such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

*Defendant/Counterclaimant* Seterus, Inc. ("Seterus"), by and through its undersigned counsel, for its claims against *Counterdefendants* Edward Scott and Bettyann Scott (collectively, "Counterdefendants") herein, states and alleges as follows:

## THE PARTIES

1.   Seterus is a Delaware corporation doing business in Arizona.

2.   Counterdefendants are Arizona residents.

3.   Seterus is informed and believes and on that basis alleges that at all times mentioned in this Counterclaim, each of the Counterdefendants was the agent, partner, co-conspirator, employee, co-principal or alter-ego with each other and that each acted jointly and in cooperation with each other to perform the acts against and inflict damages upon Seterus as alleged in this Counterclaim and that in doing the things alleged herein, each was acting within the course and scope of such relationship and the acts of each were ratified and adopted by the other.

## JURISDICTION AND VENUE

4.   Counterdefendants caused acts or events to occur within Maricopa County, Arizona, out of which the claims asserted herein have arisen.

5.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship). The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

6.   Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## FACTS

7.   On February 25, 2008, Counterdefendants executed a promissory note ("Note") in favor of JPMorgan Chase Bank, N.A. ("Chase") in the amount $324,000.00 secured by a deed of trust ("Deed of Trust")[1] encumbering the real property located at 3337 W King Drive, Phoenix, Arizona 85086 ("Property").

---

[1] The Note and Deed of Trust are collectively referred to herein as the "Loan."

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

8.      On September 1, 2010, Chase and Counterdefendants modified the principal balance of the Loan to $357,986.91 ("Alt Mod"). *See* **Exhibit A**.

9.      On October 1, 2010, the servicing rights to the Loan transferred to Seterus (formerly known as IBM Lender Business Process Services, Inc).

10.     After transfer of the servicing rights to Seterus, Counterdefendants contended that the terms of the Alt Mod were not properly implemented by Chase or Seterus.

11.     On May 11, 2011, Counterdefendants filed an action in Maricopa County Superior Court, State of Arizona, Case No. CV2011-052587 against Chase and Seterus  to enforce the terms of the Alt Mod ("2011 Lawsuit").

12.     In exchange for Counterdefendants' dismissal of the 2011 Lawsuit with prejudice, Seterus agreed to prepare a new modification of the Loan mirroring the terms of the Alt Mod. *See* **Exhibit B**.

13.     On or about August 18, 2011, Seterus and Counterdefendants executed a Loan Modification Agreement erroneously modifying the principal balance of the Loan to $244,796.72 ("Current Mod"). *See* **Exhibit C**.

**FIRST CAUSE OF ACTION**
**(Contract Reformation)**

14.     Seterus repeats and realleges each of the previous allegations of this Counterclaim as if fully set forth herein.

15.     The Current Mod mistakenly omitted $113,190.19 from the Loan's principal balance and did not mirror the terms of the Alt Mod.

16.     Seterus did not intend to forgive or otherwise cancel $113,190.19 of the Loan's principal balance in exchange for dismissal of the 2011 Lawsuit.

17.     Seterus discovered the mistaken omission on or about December 28, 2015.

18.     Counterdefendants knew that Seterus did not intend to forgive $113,190.19 of the Loan's principal balance.

19.     Seterus has been damaged in the amount of $113,190.19 as the Current Mod omitted this amount and Seterus cannot seek repayment of the same absent reformation of the

Current Mod.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

20.    Seterus repeats and realleges all of the previous allegations of this Counterclaim as if fully set forth herein.

21.    Alternatively, if the Current Mod is not reformed, Counterdefendants will be enriched by avoiding repayment of $113,190.19 of the Loan's principal balance.

22.    Absent reformation, Seterus will be impoverished in that it cannot seek repayment of $113,190.19 of the Loan's principal balance.

23.    Counterdefendants' lack of obligation to repay and Seterus' inability to seek repayment originated through Seterus' mistaken omission of $113,190.19 of the Loan's principal balance in the Current Mod.

24.    In settling the 2011 Lawsuit, the Seterus and Counterdefendants never agreed to forgive $113,190.19 of the Loan's principal balance, only to modify the Loan consistent with the Alt Mod's terms.

25.    If the Current Mod is not reformed, Seterus has no other remedy for seeking repayment of the mistakenly omitted $113,190.19 of the Loan's principal balance.

**WHEREFORE**, based on the foregoing, Plaintiff prays for judgment against all Counterdefendants, jointly and severally as follows:

A.    Reformation of the Current Mod by adding $113,190.19 to the principal balance;

B.    Alternatively, damages in the amount of $113,190.19, plus interest at the statutory rate from the date of Judgment until paid

C.    For reasonable attorneys' fees and costs pursuant A.R.S. §§ 12-341 and 12-341.01; and

/./././

/./././

/./././

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

1   D.  For such other and further relief as this Court may deem just and proper.

2  **RESPECTFULLY SUBMITTED** this 5th day of June 2017.

3           **WRIGHT, FINLAY & ZAK, LLP**

4

5          /s/ *Jamin S. Neil*

6          JAMIN S. NEIL
           Attorneys for *Defendant/Counterclaimant*

7          Seterus, Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of June 2017, I electronically transmitted the foregoing document and any attachments to the Office of the Clerk of the United States District Court using the CM/ECF System for filing and mailed a copy to the following:

Edward D. Scott
Bettyann Scott
3337 W. King Drive
Anthem, Arizona 85086
Plaintiffs/Counterdefendants

_/s/ Gretchen Grant_
GRETCHEN GRANT

**SETERUS, INC.'S ANSWER AND COUNTERCLAIM**

EXHIBIT   A

```
OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
       HELEN PURCELL
2010-0778256 09/09/10 08:24 AM
          8 OF 20
                              BROWN-J
```

After Recording Return To:
**CHASE HOME FINANCE LLC**
**MONROE RECORDS CENTER**
**RE: DEFAULT MODS**
**LA4-4114**
**700 KANSAS LANE**
**MONROE, LA 71203**

This Document Prepared By:
**CHASE HOME FINANCE LLC**
**3415 VISION DRIVE**
**COLUMBUS, OH 43219-0542**
———————————— [Space Above This Line For Recording Data] ————————————

# LOAN MODIFICATION AGREEMENT

Borrower ("I"):[1]  **EDWARD D SCOTT AND BETTYANN SCOTT HUSBAND AND WIFE AS**                  Loan Number  1▮▮▮▮▮
**COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP**
Lender or Servicer ("Lender"):  **JPMORGAN CHASE BANK, N.A.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
**FEBRUARY 25, 2008**
Loan Number:  1▮▮▮▮▮
Property Address ("Property"):  **3337W KING DR, PHOENIX, ARIZONA 85086**

**LEGAL DESCRIPTION:**
**LOT 399, OF ANTHEM-UNIT 9, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE**
**COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 504 OF MAPS,**
**PAGE 16, AND CORRECTED BY PLAT RECORDED IN BOOK 519 OF MAPS, PAGE 5. PARCEL**
**ID NUMBER: 203-05-522**

**REFERENCE NUMBERS OF DOCUMENTS MODIFIED:**
**RECORDED FEBRUARY 29, 2008 DOCUMENT ID: 20080183461**
**Tax Parcel No: 20305522 8**

This Modification Agreement ("Agreement"), as set forth below, amends and supplements (1) the
Mortgage on the Property, and (2) the Note secured by the Mortgage.  The Mortgage and Note

—————————————————————
[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I."  For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**LOAN MODIFICATION AGREEMENT**     ver. 06_11_2010_04_39_18     *(page 1 of 7 pages)*    FNMA Alt Mod V1 4-2-10

```
3 + 21 + 12 14 13 21 52 + 1 + 50 7
```

20100778256

Loan Number ████████

together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.

1. **The Modification.** The Loan Documents will automatically become modified on **SEPTEMBER 01, 2010** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The first modified payment will be due on **SEPTEMBER 01, 2010.**

    A.  The new Maturity Date will be: **AUGUST 01, 2050.**

    B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$357,986.91** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C.  **$129,603.00** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$228,383.91**. Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **AUGUST 01, 2010** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **SEPTEMBER 01, 2010**. My payment schedule for the modified Loan is as follows:

LOAN MODIFICATION AGREEMENT     ver. 06_11_2010_04_39_18    *(page 2 of 7 pages)*   FNMA Alt Mod V1 4-2-10

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
3 + 21 + 12 14 13 21 52 + 1 + 507

20100778256

Loan Number ▮▮▮▮▮▮▮

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 08/01/2010 | $691.61 | $223.07 May adjust periodically | $914.68 May adjust periodically | 09/01/2010 | 60 |
| 6 | 3.000% | 08/01/2015 | $803.48 | May adjust periodically | May adjust periodically | 09/01/2015 | 12 |
| 7 | 4.000% | 08/01/2016 | $921.58 | May adjust periodically | May adjust periodically | 09/01/2016 | 12 |
| 8-40 | 4.750% | 08/01/2017 | $1,013.40 | May adjust periodically | May adjust periodically | 09/01/2017 | 396 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 1.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

2. **Additional Agreements**. I acknowledge, represent and agree to the following:

A. This Agreement shall supersede the terms of any modification, forbearance, trial period or workout plan that I previously entered into with Lender.

B. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents including my

LOAN MODIFICATION AGREEMENT    ver. 06_11_2010_04_39_18    (page 3 of 7 pages)    FNMA Alt Mod V1 4-2-10

3 + 2 1 + 1 2 1 4 1 3 2 1 5 2 + 1 + 5 0 7

20100778256

Loan Number ██████████

agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

C. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

D. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

E. If I received a discharge of personal liability in a Chapter 7 bankruptcy after ████████ the Loan Documents, Lender agrees that I have no personal liability for the debt under the Loan Documents. However, I understand that my bankruptcy discharge of personal liability did not affect the Lender's lien on the Property. In other words, any right the Lender has under the Loan Documents and applicable law to foreclose on the Property if I am in default has not been discharged in bankruptcy. I accordingly understand that if I make no additional payments or otherwise default, the Lender could seek to foreclose on the Property but the Lender could not seek to hold me personally liable. I have chosen to execute this Agreement in order to have the option to make voluntary payments on the debt under the Loan Documents, as modified by the terms of this Agreement.

F. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me. Any buyer or transferee of the Property will not be permitted, under any circumstances, except as required by law, to assume my Loan, as modified by this Agreement.

G. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void. I further acknowledge that any voluntary or involuntary prepayments of principal made prior to the new Maturity Date can be applied by Lender at its sole discretion first to any Deferred Principal Balance, with the remainder to be applied to the Loan in accordance with the Loan Documents.

H. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

LOAN MODIFICATION AGREEMENT        ver. 06_11_2010_04_39_18        (page 4 of 7 pages)    FNMA Alt Mod V1 4-2-10



3 + 2 1 + 1 2 1 4 1 3 2 1 5 2 + 1 + 5 0 7

20100778256

**Loan Number** ▮▮▮▮▮▮▮

I. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Loan Modification program.

J. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

K. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 2. K. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

L. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined above) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any of the requirements under this Agreement.

M. I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

**LOAN MODIFICATION AGREEMENT**     ver. 06_11_2010_04_39_18     *(page 5 of 7 pages)*     FNMA Alt Mod V1 4-2-10



3 + 2 1 + 1 2 1 4 1 3 2 1 5 2 + 1 + 5 0 7

20100778256

Loan Number ████████

_____[Space Below This Line For Borrower Acknowledgement]_____

_Edward D. Scott_                          Date: 6  |22, 2010
Borrower - **EDWARD D SCOTT**

_Bettyann Scott_                           Date: 6 |22| 2010
Borrower - **BETTYANN SCOTT**

State of **ARIZONA**
County of **Maricopa**

The foregoing instrument was acknowledged before me this **22ND** day of
**June**_____, **2010** by **EDWARD D SCOTT AND BETTYANN SCOTT**.

[SEAL]    ┌─────────────────────────────┐
          │  JOSEPH L. FECHTER          │      _signature_
          │  Notary Public              │    (Signature of person taking acknowledgment)
          │  Maricopa County, Arizona   │
          │  My Comm. Expires 06-11-2012│      **Notary Public**
          └─────────────────────────────┘    (Title or rank)

                                            _____
My Commission expires: **June 11,2012**      (Serial number, if any)

**LOAN MODIFICATION AGREEMENT**      ver. 06_11_2010_04_39_18      *(page 6 of 7 pages)*    FNMA Alt Mod V1 4-2-10

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
3 + 2 1 + 1 2 1 4 1 3 2 1 5 2 + 1 + 5 0 7

20100778256

**Loan Number**

_____[Space Below This Line For Corporate Acknowledgement]_____

**JPMORGAN CHASE BANK, N.A.**
Lender

By: _____

Date: _____      Antonia Vera

                                         Vice President

State of COLORADO
County of DENVER

The foregoing instrument was acknowledged before me this 25th day of August 2010 by Antonia Vera _____, Vice President of JPMORGAN CHASE BANK, N.A., a national banking association.

_____
(signature of person taking acknowledgment)

[SEAL]
PATRICIA CLAIRE McLAUGHLIN
NOTARY PUBLIC
STATE OF COLORADO

                            Notary
                           (title or rank)

My Commission Expires 07/21/2014

                          _____
                           (serial number, if any)

My Commission expires: _____

**LOAN MODIFICATION AGREEMENT**     ver. 06_11_2010_04_39_18    *(page 7 of 7 pages)*    FNMA Alt Mod V1 4-2-10



3 + 2 1 + 1 2 1 4 1 3 2 1 5 2 + 1 + 5 0 7

EXHIBIT  B

**From:**     Ed Scott <edscott623@yahoo.com>
**Sent:**     Friday, May 27, 2011 10:17 AM
**To:**      Bonfiglio, Steve
**Subject:**    Re: Scott v. JP Morgan Chase et. al.

Thank you. Best wishes for a happy holiday weekend,
Ed and Bettyann Scott

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** 'Ed Scott' <edscott623@yahoo.com>
**Sent:** Friday, May 27, 2011 9:25 AM
**Subject:** RE: Scott v. JP Morgan Chase et. al.

I will ensure that that Fannie Mae is on board with the settlement.

Steve Bonfiglio
In-House Counsel
Lender Business Process Services
14523 Millikan Way, Suite 200
Beaverton, OR 97005
Phone:  503-686-7278
Fax:  877-371-7794

PREPARED BY LBPS ATTORNEY / PRIVILEGE REVIEW REQUIRED

This e-mail and its attachments, if any, may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify me of the misdirection by reply e-mail.

YOU SHOULD CONSIDER THIS COMMUNICATION AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR.  ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT.  HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY.

**From:** Ed Scott [mailto:edscott623@yahoo.com]
**Sent:** Friday, May 27, 2011 9:19 AM
**To:** Bonfiglio, Steve
**Subject:** Re: Scott v. JP Morgan Chase et. al.

Mr Bonfiglio:

We foresee a problem with simply using the current Alt Mod documents unless "working it backwards" includes Fannie Mae approval, or alternatively, that LBPS certifies its validity without Fannie Mae approval and updates our loan records with Fannie Mae. Your firm has previously insisted the Alt Mod contract is invalid unless approved by Fannie Mae (we have disputed this) and, previous to this settlement discussion, has refused to implement it on that basis.  Whether or not it actually needed Fannie Mae approval before Chase executed it is still

1

an unknown.  Whether it needs Fannie Mae approval now is not known.  We do know that Chase never sent the Alt Mod to Fannie Mae and all parties except us are operating on the assumption the CHAMP is the correct document.  What happens downstream when the stream of payments falls short of Fannie Mae's assumptions?

We were under the impression from our email chain that IBM LBPS would prepare a new loan modification contract in conformance with the terms of the Alt Mod thereby disposing of this question altogether.  Now we are not sure of the validity or durability of our proposed settlement.

Can you please advise us how we can address this issue?  Feel free to call me if you wish to discuss.

Thanks,
Ed Scott
623-337-2688


**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** 'Ed Scott' <edscott623@yahoo.com>
**Sent:** Monday, May 23, 2011 11:27 AM
**Subject:** RE: Scott v. JP Morgan Chase et. al.

Yes, in fact, I had a meeting this morning with the team that will roll out the modification.
We aren't going to do another one, we'll just use the one that was already executed and work it backwards.

This will probably take a couple days, and which point we'll have the refund amount calculated and can then take the next steps to finalize the whole thing.

Your numbers look good to me, although the actual numbers may be off by a light amount because I don't think the actual monthly difference was exactly $73.


Steve Bonfiglio
In-House Counsel
Lender Business Process Services
14523 Millikan Way, Suite 200
Beaverton, OR 97005
Phone:  503-686-7278
Fax:  877-371-7794

PREPARED BY LBPS ATTORNEY / PRIVILEGE REVIEW REQUIRED

This e-mail and its attachments, if any, may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify me of the misdirection by reply e-mail.

YOU SHOULD CONSIDER THIS COMMUNICATION AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR.  ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT.  HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY

DISCHARGE OF THIS DEBT, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY.

**From:** Ed Scott [mailto:edscott623@yahoo.com]
**Sent:** Monday, May 23, 2011 11:25 AM
**To:** Bonfiglio, Steve
**Subject:** Fw: Scott v. JP Morgan Chase et. al.

Mr. Bonfiglio:

It has been two weeks since I responded to your email and asked you two questions regarding our settlement agreement.  Having not heard back from you I am concerned you did not receive that email and the questions.  Can you please advise me whether you received the enclosed email, what the answers to the questions are, and what the status and plan are for effecting the settlement?

Thank you,
Ed and Bettyann Scott

----- Forwarded Message -----
**From:** Ed Scott <edscott623@yahoo.com>
**To:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**Sent:** Monday, May 9, 2011 6:03 PM
**Subject:** Re: Scott v. JP Morgan Chase et. al.

Good. We'll keep paying current rate until you can refund the overcharges. If the new payment can be effected before July 1, I calculate the refund to be 10 x $73 + $976 + $1200 = $2900 ( - $73 if done before June 1 or + $73 per month if done after). Are our numbers synched?  Are you planning to prepare a new loan modification agreement altogether or simply process the Alt Mod?

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** 'Ed Scott' <edscott623@yahoo.com>
**Sent:** Monday, May 9, 2011 3:25 PM
**Subject:** RE: Scott v. JP Morgan Chase et. al.

Excellent.  I'm glad we could come to terms.

Let me get started on the internal process of getting the modification rolled out, moneys calculated etc.
With respect to the amounts you have over-paid, would you prefer that we just account for that (perhaps in the form of a lowered next payment), or do you want that money actually refunded?

**From:** Ed Scott [mailto:edscott623@yahoo.com]
**Sent:** Monday, May 09, 2011 3:19 PM
**To:** Bonfiglio, Steve
**Subject:** Re: Scott v. JP Morgan Chase et. al.

We'll accept the offer.

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** 'Ed Scott' <edscott623@yahoo.com>
**Sent:** Friday, May 6, 2011 2:48 PM
**Subject:** RE: Scott v. JP Morgan Chase et. al.

You are right, it is considerably more work to engage in this informal discovery process, which is precisely why I made this settlement offer in the first place.
If I wanted to litigate this case, I wouldn't have made the offer.

The settlement offer we've discussed is good through the close of business Monday.  If we haven't agreed to a deal by then, I'll have local counsel file a response and serve an Offer of Judgment upon you in the form of the current settlement offer, which, if rejected by you, can have the effect of cutting off your attorneys fees/costs claims, and potentially exposing you to sanctions.

If you think you have claims against other parties, I'll leave that matter in your capable hands.

---

**From:** Ed Scott [mailto:edscott623@yahoo.com]
**Sent:** Friday, May 06, 2011 12:35 PM
**To:** Bonfiglio, Steve
**Subject:** Re: Scott v. JP Morgan Chase et. al.

Thank you for the additional information. My understanding is that modifications to Fannie Mae loans must be approved by Fannie Mae.  It is also my understanding that Mr. White refused an instruction from Chase to honor the Alt Mod contract until LBPS had received Fannie Mae's approval to do so.  Therefore, I conclude Mr. White knows the exact status of our loan modifications with respect to Fannie Mae reviews, approvals, or disapprovals.  Are you able to elicit any further information from Mr. White regarding which if any of the two modifications were approved by Fannie Mae, and if either Chase or IBM LBPS attempted to get Fannie Mae's approval on the Alt Mod.

If we are on a path to settling our claims against LBPS, I am asking for your assistance in finding out what the exact status of approval is from LBPS's viewpoint so we can recompose our remaining claims against Chase and/or Fannie Mae.

I recognize these questions are time consuming and I mean to introduce no delays in your ability to respond to the complaint on time.  Please let me know if you need an extension in any response deadlines to resolve these questions.

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** 'Ed Scott' <edscott623@yahoo.com>
**Sent:** Friday, May 6, 2011 11:21 AM
**Subject:** Re: Scott v. JP Morgan Chase et. al.

*SETTLEMENT COMMUNICATION - SUBJECT TO ALL EVIDENTIARY PROTECTIONS*

Fannie Mae instructed Chase to service-transfer this loan (and about 100,000 other loans) to LBPS on October 1, 2010.

However, it is extremely unlikely that Fannie Mae had any direct involvement or knowledge regarding the details of your specific loan.

**From:** Ed Scott [mailto:edscott623@yahoo.com]
**Sent:** Friday, May 06, 2011 1:01 AM
**To:** Bonfiglio, Steve
**Subject:** Re: Scott v. JP Morgan Chase et. al.

I am a little bit confused on this. Does this mean Fannie Mae directed Chase to transfer the loan to IBM LBPS on October 1, 2010?  We need to know if Fannie Mae approved or disapproved the CHAMP and the Alt Mod, or if Fannie Mae was not in the loop on either document.  I think Randy White knows the answers to these questions but I was unsuccessful in my attempts to contact him between December and March.

Thanks for the information in both of your responses.

Ed Scott

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** 'Ed Scott' <edscott623@yahoo.com>
**Sent:** Thursday, May 5, 2011 3:43 PM
**Subject:** Re: Scott v. JP Morgan Chase et. al.

SETTLEMENT COMMUNICATION - ALL APPLICABLE EVIDENTIARY PROTECTIONS APPLY.

The only possible way that the loan could ever go back to Chase would be at Fannie's instruction.  But I cannot guarantee they won't do it.
The point is that LBPS has no authority to make a loan transfer off of our platform, it can only be at Fannie's direction.

Jeff Gautier has no idea how the process works and was speaking completely out of his element.

**From:** Ed Scott [mailto:edscott623@yahoo.com]
**Sent:** Thursday, May 05, 2011 3:42 PM
**To:** Bonfiglio, Steve
**Subject:** Re: Scott v. JP Morgan Chase et. al.

This is not a theoretical issue and "no plans at present" would not address our concern. LBPS has already threatened us with sending the loan back to Chase (Jeff Gautier). I would need to see the language that assures LBPS will not send the loan back to Chase unless so instructed by Fannie Mae.

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** 'Ed Scott' <edscott623@yahoo.com>
**Sent:** Thursday, May 5, 2011 3:09 PM
**Subject:** Re: Scott v. JP Morgan Chase et. al.

I believe I can agree to that.  With the understanding that Fannie Mae, because of certain contractual terms that may exist between Fannie Mae and Chase, (and completely out of LBPS's control), there is potential that this loan could return to Chase for servicing at some point.  To my knowledge, there are currently no plans to move this loan back to Chase.

**From:** Ed Scott [mailto:edscott623@yahoo.com]
**Sent:** Thursday, May 05, 2011 2:25 PM

**To:** Bonfiglio, Steve
**Subject:** Re: Scott v. JP Morgan Chase et. al.

Let me rephrase the request. I understand that Fannie Mae can direct reassignment and would not expect you to be able to limit their ability to direct it anywhere they want. I'm asking if LBPS will agree to keep the loan for servicing unless so redirected by Fannie Mae. Feel free to call me if you would like to discuss further.

Ed Scott
623-337-2688

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** 'Ed Scott' <edscott623@yahoo.com>
**Sent:** Thursday, May 5, 2011 12:07 PM
**Subject:** Re: Scott v. JP Morgan Chase et. al.

*SETTLEMENT COMMUNICATION - SUBJECT TO ALL EVIDENTIARY PROTECTIONS*

I cannot agree to that.  It isn't that I don't want to, it's that LBPS doesn't have the authority to consent to that limitation.  We service loans on behalf of the company that owns the loans (in this case, Fannie Mae).  We don't have the option of keeping files here against Fannie Mae's wishes.  If the client, Fannie Mae, desires to move these files to another servicer, including Chase, that is entirely their decision.

The terms of any settlement can be kept confidential.

**From:** Ed Scott [mailto:edscott623@yahoo.com]
**Sent:** Thursday, May 05, 2011 10:56 AM
**To:** Bonfiglio, Steve
**Subject:** Re: Scott v. JP Morgan Chase et. al.

Mr Bonfiglio:

Will you also stipulate that IBM LBPS will not under any circumstances transfer this loan back to Chase and that the terms of any setllement we may reach will be confidential?

Thank you,
Ed Scott

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** "'edscott623@yahoo.com'" <edscott623@yahoo.com>
**Sent:** Wednesday, May 4, 2011 8:27 PM
**Subject:** Re: Scott v. JP Morgan Chase et. al.

Settlement communication. Subject to all applicable evidentiary protection.

I think I can swing your counter-offer.

With regards to Chase, Ill leave that between you and them, I don't represent them, and cannot speak on their behalf.

I'm standing in my kitchen right now, so I'll send something more formal tomorrow when I get back to the office.

Goodnight.
Thank you.


Steve Bonfiglio

---

**From**: Ed Scott [mailto:edscott623@yahoo.com]
**Sent**: Wednesday, May 04, 2011 06:56 PM
**To**: Bonfiglio, Steve
**Subject**: Re: Scott v. JP Morgan Chase et. al.

Mr. Bonfiglio:

Thank you for contacting us. What you propose is logical as regards IBM LBPS. Please keep in mind two things that concern us were we to just simply reset on the right contract. First, we are concerned about future retaliations by IBM LBPS for our having to file this lawsuit as the only means of addressing the problem. In the first several weeks after the loan was transfered from Chase the people at IBM were extraordinarily understanding and helpful in trying to get this error corrected; even going so far as to advise us to send in the "correct" Alt Mod payments and promising on every contact the problem would be corrected "quickly." Then three things happened that changed our perception of IBM LBPS. LBPS intervened on its own initiative to dishonor the Alt Mod contract and did so on a false pretense claiming "the Alt Mod starting balance should have been higher." When you consider we made an extra payment before the Alt Mod went into effect, the truth is the Alt Mod balance should have been lower. When we sent in the correct payments as instructed by LBPS, LBPS immediately initiated foreclosure proceedings for failing to make the higher incorrect payments. Also, Chase instructed LBPS to replace the wrong CHAMP agreement with the right Alt Mod agreement and again LBPS refused for unstated reasons and, as far as we know from conversations with Chase, went on to convince Chase to also repudiate the contract. To resolve this matter with LBPS we want written assurances there will be no further interference by LBPS with the terms of the contract and that we will be treated as customers in good standing.

The second issue is that we have now incurred legal expenses specific to IBM LBPS's participation. In addition to the refund you speak of, which would consist of ($73 x 10 months + 1 extra CHAMP payment) we would need to be reimbursed approximately $1,200 in legal fees for attorney consultations, PACER research, Lexis subscription, filing fees, supplies, travel etc. Keep in mind that we have not claimed the 4 documented RESPA violations attributable to LBPS having not responded to our formal attempts to resolve the problem but plan to do so if this case is removed to federal court.

Finally, it is not clear to us how our claims against Chase can be resolved separately from LBPS if the resolutions of those issues were to affect our current loan agreement. We have several issues with Chase on this including the wrongful denial of a HAMP modification, and what appears to be illegal costs and fees added onto the loan balance. (Note that both the CHAMP and the Alt Mod declare the same starting capital balance, yet there are Fannie Mae restrictions

on what can be added to the Alt Mod.) We would need IBM LBPS to stipulate to implement any changes to the loan that occur as a result of this action.

Of course, our long term goal is to keep our home, perform on the new loan agreement, and have a positive relationship with our loan servicer through the course.

If the above issues can be addressed we would agree to drop IBM LBPS as a defendant in this action.

Thank you for contacting us.

Ed Scott

**From:** "Bonfiglio, Steve" <Steve.Bonfiglio@lbps.com>
**To:** "'edscott623@yahoo.com'" <edscott623@yahoo.com>
**Sent:** Wednesday, May 4, 2011 5:25 PM
**Subject:** Re: Scott v. JP Morgan Chase et. al.

***SETTLEMENT COMMUNICATION - SUBJECT TO ALL EVIDENTIARY PROTECTIONS***

Mr. Scott:

My name is Steve Bonfiglio and I am in-house counsel at LBPS.  I have been watching the progress of the lawsuit you filed, in particular your motion to file an amended complaint, and now your withdrawal of that motion and assertion of your right to file an amended pleading because there are currently no responsive pleadings on file.

I have retained Arizona counsel who will file a response once all of the dust settles, but it occurs to me that the easiest solution here is to just modify the loan to the terms set out in the August 25, 2010 agreement you signed with Chase.  Frankly, I don't know what happened back when Chase was servicing the loan, but I do know that several modifications came over to LBPS just like yours, where because of time delays and bad record-keeping by the prior loan servicer, it made it remarkably hard for us to import the terms of these modifications onto our system.

And I also see that you are making your payments (even at the higher payment amount), and I imagine that, ultimately, what you want is the agreement you signed.

My offer is to restore your loan to the position it would have been had the August 25, 2010 modification been properly handled by Chase.  This will keep you current, reduce the payments and terms to the level you contracted for, and should produce a refund given the fact that you've been paying  the higher amount all this time.

Please advise, as my local attorney is waiting for instructions.

Thank you,

Steve Bonfiglio
In-House Counsel
Lender Business Process Services
14523 Millikan Way, Suite 200
Beaverton, OR 97005
Phone:  503-686-7278
Fax:  877-371-7794

PREPARED BY LBPS ATTORNEY / PRIVILEGE REVIEW REQUIRED

This e-mail and its attachments, if any, may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify me of the misdirection by reply e-mail.

YOU SHOULD CONSIDER THIS COMMUNICATION AS COMING FROM A DEBT COLLECTOR AS WE SOMETIMES ACT AS A DEBT COLLECTOR.  ANY INFORMATION PROVIDED BY YOU WILL BE USED TO COLLECT THIS DEBT.  HOWEVER, IF YOU ARE IN BANKRUPTCY OR RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT, THIS COMMUNICATION IS NOT AN ATTEMPT TO COLLECT THE DEBT, BUT NOTICE OF POSSIBLE ENFORCEMENT OF OUR LIEN AGAINST THE COLLATERAL PROPERTY.

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended

recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an offer or acceptance and it is not intended to be all or part of an agreement.

_____

_____

This e-mail message is for the sole use of the intended recipient(s). It may contain confidential information, legally privileged information or other information subject to legal restrictions. If you are not the intended recipient, please do not read, copy, use, or disclose this message. Please notify the sender by replying to this message, and then delete or destroy all copies of this message in all media. Also, this email message is not an

offer or acceptance and it is not intended to be all or part of an agreement.

_____

EXHIBIT  C

Presented by: EDWARD D SCOTT
Submitted by: EDWARD D SCOTT

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
HELEN PURCELL
20110939224 11/14/2011 11:45:02 AM
KIOSK RECORDING
DOCUMENT 1 of 1    PAGES 9
tomutac

LOAN MODIFICATION AGREEMENT

# DO NOT REMOVE

# This is part of the official document

20110939224

_____ [Space Above This Line For Recording Data] _____

L786B                                                       REDACTED

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this 18th day of August, 2011, between Edward D Scott and Bettyann Scott ("Borrower") and Seterus, Inc. ("Servicer"), and Mortgage Electronic Registration Systems, Inc. ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated February 29, 2008 and recorded in Instrument Number 20080183461, of the MARICOPA Records of Maricopa and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

3337 W King Dr, Anthem, AZ 85086,

the real property described being set forth as follows:

Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of September 1, 2011, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $244,796.72 consisting of the unpaid amount(s) loaned to Borrower by Servicer plus any interest and other amounts capitalized.

2. $20,103.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $224,693.72. Interest at the rate of 2% will begin to accrue on the Interest Bearing Principal Balance as of August 1, 2011 and the first new monthly payment on the Interest Bearing Principal Balance will be due on September 1, 2011. The new Maturity Date will be August 1, 2051. My payment schedule for the modified Loan is as follows:

| Year | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Payment Begins On | Number of Monthly Payments |
|------|---------------|---------------------------|-----------------------------------------------|-------------------|----------------------------|
| 1 - 5 | 2% | 8/1/2011 | $680.43 | 9/1/2011 | 60 |

REDACTED

DDJ

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1/01 (rev. 01/09)  (page 1 of 4)

20110939224

| 6 | 3% | 8/1/2016 | $790.50 | 9/1/2016 | 12 |
| 7 - 40 | 4% | 8/1/2017 | $906.69 | 9/1/2017 | 408 |
| N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A |
| N/A | N/A | N/A | N/A | N/A | N/A |

3.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.  If I make a partial prepayment of Principal, the Servicer may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Servicer's prior written consent, Servicer may require immediate payment in full of all sums secured by the Security Instrument. If Servicer exercises this option, Servicer shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.  Borrower understands and agrees that:

    (a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Servicer's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Servicer is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Servicer.

    (c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT     Form 3179  1/01 (rev. 01/09)  (page 2 of 4)

20110939224

or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Servicer in connection with this Agreement, including
recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179   1/01 (rev. 01/09)   (page 3 of 4)

20110939224

secured by the Security Instrument, unless stipulated otherwise by Servicer.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Servicer, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

**Seterus, Inc.**

_____ (Seal)
           -Servicer

By: _____

**Jason Solomon**
**Loan Administration, AVP**    OCT 27 2011

_Edward D. Scott_ (Seal)
           -Borrower

_____ (Seal)
           -Borrower

_____ [Space Below This Line For Acknowledgments] _____

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179   1/01 (rev. 01/09)   (page 4 of 4)

20110939224

## ACKNOWLEDGEMENT

State of _ARIZONA_

County of _MARICOPA_


On _AUGUST 30, 2011_ before me, _HOWARD GORE_ , personally appeared

_EDWARD D. SCOTT_ , _BETTYANN SCOTT_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.


WITNESS my hand and official seal.


Signature _____ (Seal)


        OFFICIAL SEAL
        HOWARD GORE
        NOTARY PUBLIC – ARIZONA
        MARICOPA COUNTY
        My Comm. Expires July 5, 2013

RE: Edward D Scott
Bettyann Scott
REDACTED
L786 - Fannie Mae & Seterus, Inc. Modifications


F028B

20110939224

# Exhibit A

LOT 399, OF ANTHEM - UNIT 9, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF
THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, RECORDED IN BOOK 504 OF
MAPS, PAGE 16, AND CORRECTED BY PLAT RECORDED IN BOOK 519 OF MAPS, PAGE 5.

Also Known As: 3337 W King Dr, Anthem, AZ 85086

REDACTED       Edward D Scott and Bettyann Scott

F037A

20110939224

## LOAN MODIFICATION AGREEMENT ADDENDUM

This Loan Modification Agreement Addendum, made on August 30, 2011 between Edward D Scott and Bettyann Scott ("Borrower") and Seterus, Inc. is entered into in connection with and as an attachment to the foregoing Loan Modification Agreement dated August 18, 2011 and extends that Agreement as follows:

"This Loan Modification Agreement supersedes and extinguishes all prior loan modification agreements related to the Note and Security Instrument, including the Alt Mod Agreement recorded on September 9, 2010 at Recording Number 20100778256."

Seterus, Inc.

_____ (Seal)
-Servicer

_Edward D. Scott_ (Seal)
-Borrower

By: _____

_____ (Seal)
-Borrower

Jason Solomon
Loan Administration, AVP    OCT 2 7 2011

_____ [Space Below This Line For Acknowledgments] _____

LOAN MODIFCATION AGREEMENT ADDENDUM TO FORM 3179

20110939224

# ACKNOWLEDGEMENT

State of _ARIZONA_

County of _MARICOPA_

On _AUGUST 30, 2011_ before me, _HOWARD GORE_ , personally appeared

_EDWARD D. SCOTT_ , _BETTYANN SCOTT_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)

OFFICIAL SEAL
HOWARD GORE
NOTARY PUBLIC – ARIZONA
MARICOPA COUNTY
My Comm. Expires July 5, 2013

      RE: Edward D. Scott
      Bettyann Scott
      Seterus, Inc.

REDACTED

      Loan Modification Agreement Addendum

F028B